Mark G. Worischeck/Bar No. 011147
J. Adam Tate /Bar No. 029084
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099

Firm E-mail:  Minutes@SandersParks.com

Mark G. Worischeck
  Direct Phone: 602.532.5795
  Direct Fax: 602.230.5054
  Mark.Worischeck@sandersparks.com

J. Adam Tate
  Direct Phone: 602.532.5615
  Direct Fax: 602.230.5015
  Adam.Tate@sandersparks.com

*Attorneys for Plaintiff Great American*
*Alliance Insurance Company*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Great American Alliance Insurance Company, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| Mark C. Williams and 6950 West Bell Road, LLC, | |
| Defendants. | |

Plaintiff Great American Alliance Insurance Company ("Great American"), for its Complaint for Declaratory Judgment, alleges as follows:

### JURISDICTION AND VENUE

1.      Great American brings this declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. Section 2201 for a declaration of rights of the parties under an insurance policy that Great American issued to Defendants.

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

3.     Great American is an Ohio corporation headquartered in Ohio.  Accordingly, Great American is a citizen of Ohio for purposes of diversity jurisdiction.

4.     Defendant Mark Williams is, upon information and belief, a citizen of Arizona.

5.     Defendant 6950 West Bell Road, LLC is, upon information and belief, a citizen of Arizona, because its owners/members are citizens of Arizona.

6.     Defendant Williams is, and was at all material times, the manager of Defendant 6950 West Bell Road, LLC.

7.     This matter involves an insurance coverage and appraisal dispute regarding insured property located at 6950 W. Bell Road, Glendale, Arizona (the "Property").

8.     This action is properly venued in the United States District Court for the District of Arizona under 28 U.S.C. Section 1391 because the property that is the subject of the action is situated in this judicial district, a substantial part of the events giving rise to the claim occurred in this judicial district, and, upon information and belief, Williams resides in this judicial district.

9.     There is an actual controversy regarding the parties' legal rights, entitling Great American to declaratory judgment pursuant to 28 U.S.C. Section 2201.

## FACTUAL BACKGROUND

### The Policy

10.     Great American issued insurance policy no. PAC 5-36-31-92-02 to Defendants with effective dates of September 30, 2010 to September 30, 2011 (the "Policy").  See Exhibit 1.

11.     The Policy insured the Defendants' interest in the Property against direct physical loss or damage subject to all terms, conditions, limitations, and exclusions set forth in the Policy. The Policy states:

*A.  Coverage*

*We will pay for direct physical loss of or damage to covered property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*

12.     The Policy also contains the following exclusions:

*B.  Exclusions*

*2.  We will not pay for loss or damage caused by or resulting from any of the following…*

*d. (1)  wear and tear;*

*(2)  rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*

*…*

*(4)  settling, cracking, shrinking or expansion;*

*(5)  nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals…*

*But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.*

*3.  We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c.  But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*

*c. Faulty, inadequate or defective: …(2) design, specifications, workmanship, repair, construction, renovation, remodeling,…(3) materials used in repair, construction, renovation or remodeling, or (4) maintenance; of part or all of any property on or off the described premises.*

13.     The Policy contains the following provision for resolution of disagreements concerning the amount of loss:

> 2.  *Appraisal*
>
> *If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:*
>
> a.  *Pay its chosen appraiser; and*
>
> b.  *Bear the other expenses of the appraisal and umpire equally.*
>
> *If there is an appraisal, we will still retain our right to deny the claim.*

**The Claim**

14.     On or around May 5, 2011, Williams notified Great American of hail damage to the Property reportedly caused by an October 5, 2010 hail storm.

15.     Great American investigated the claim, which included an inspection of the Property in June 2011, and consultation with Williams' preferred HVAC contractor, AZTECH Mechanical, and a roofing consultant, David Price of White Guard Roof Coatings & Waterproofing.

16.     Evidence of hail-related damage was found on certain rooftop air conditioning units, certain parapet walls, and on certain unprotected built-up areas around the air conditioning units. Hail-related damage was not found on the main roof.

17.     Williams' preferred HVAC contractor, AZTECH Mechanical, determined that hail-related damage to all but 2 of the 25 rooftop air conditioning units could be repaired by combing the condenser fins.  The other two air conditioning units sustained greater damage that required

replacement.  Based on these findings, on or about June 28, 2011, Great American issued an actual cash value ("ACV") payment to Williams of $19,968.46 for damage to the air conditioning units, parapet walls, and built-up areas around the air conditioning units.  Williams accepted this payment but did not perform the recommended scope of repairs to the air conditioning units.

18.    On January 3, 2012, Great American issued an additional payment to Williams for recoverable depreciation in the amount of $2,646.16, which Williams accepted, and the claim was closed.

19.    Williams did not contest Great American's adjustment of the loss or payments made by Great American, nor did he seek additional payments under the Policy for hail-related damage in 2012, 2013, 2014, or 2015.

20.    The claim was re-opened over four years later in June 2016 when Williams contacted Great American and reported finding additional hail damage to the property.

21.    Upon re-opening the claim, Great American retained additional consultants who inspected the Property and found evidence of limited hail damage to certain elevations of the stucco exterior.  On December 7, 2016, Great American issued to Williams an additional payment of $60,662.20 for repairs that included patching limited damage to certain elevations of the stucco exterior.  Williams accepted this payment.

22.    Great American also commissioned laboratory testing by Roof Technical Services, Inc., which confirmed Great American's previous determination that the main roof of the Property did not sustain any hail damage.

23.    On February 15, 2017, Williams' public adjuster, James O'Toole of The O'Toole Company, sent Great American a $1,423,062.04 repair estimate that included costs for, among other things, replacement of the entire roof and complete replacement of 21 rooftop air conditioning units.

24.    Following receipt of the O'Toole Company estimate, Great American retained HVAC Investigators (HVACi) to perform a comprehensive inspection and diagnostic testing of

the rooftop air conditioning units.  HVACi issued a report dated April 4, 2017 finding that all hail-related damage to the air conditioning units could be repaired for a total cost of $24,535.55.  Based on these findings, Great American issued a final ACV payment of $33,623.94 to Williams on June 23, 2017.  Williams accepted this payment.

25.    To date, Great American has made $116,901.00 in undisputed ACV payments related to Defendants' hail damage claim for damage to the rooftop air conditioning units; parapet walls and built up areas around the air conditioning units; stucco; and store front signage.

26.    To date, Defendants have not submitted to Great American any evidence of hail-related damage to the main roof of the Property.

**The Appraisal Demand**

27.    On July 12, 2017, Great American received a written demand for appraisal from Williams' public adjuster, James O'Toole, requesting appraisal regarding (1) damage to the rooftop air conditioning units and (2) claimed damage to the roof of the Property.

28.    Mr. O'Toole designated Brian Molineaux as Defendants' appraiser.  Great American designated Kurt Grosz as its appraiser, and the appraisers jointly agreed that Judge Edward Burke would serve as umpire.

29.    Following an inspection of the property with roofing consultant David Hill of Premier Roofing & Waterproofing, both appraisers acknowledged that there was no hail damage to the roof of the Property, and that the appraisal would therefore be limited to the amount of loss for the rooftop air conditioning units only.  This is consistent with the prior findings of Roof Technical Services, Inc., which confirmed through laboratory testing that the roof was not damaged by hail.

30.    Subsequent to the appraisers' acknowledgment that there was no hail damage to the roof, Mr. O'Toole advised Great American that Defendants' designated appraiser, Brian

Molineaux, was being replaced by a new appraiser, Jason Rohde, who is Mr. O'Toole's son-in-law.

31.     Defendants' replacement appraiser, Jason Rohde, rejected the appraisers' prior agreement that the scope of the appraisal was limited to the amount of loss to the rooftop air conditioning units.

32.     On December 18, 2017, Great American's designated appraiser, Mr. Grosz, provided Mr. Rohde with a copy of the Premier Roofing & Waterproofing report finding no hail damage to the roof.  Following this communication, Mr. Grosz did not receive communication from Mr. Rohde until over six months later on June 21, 2018 when Mr. Rohde wrote Mr. Grosz and requested that they proceed to involve the umpire in the appraisal.

33.     On June 21, 2018, Mr. Rohde provided Mr. Grosz with his appraisal position, consisting of a $1,423,062.04 repair estimate.  The estimate that Mr. Rohde provided mirrors the estimate provided by Mr. O'Toole in 2017, and includes costs for replacement of all the rooftop air conditioning units and replacement of the entire roof.

34.     Despite the insured's demand for appraisal of only the roof and the air conditioning units, Mr. Rohde's estimate included costs for repairs to various other parts of the Property, including the stone veneer, stucco EIFS system, and asphalt parking lot.

35.     Beyond submitting an estimate from Defendants' public adjuster, Mr. Rohde submitted no photographs, expert reports, or any evidence of hail damage to the main roof of the Property.

36.     On August 2, 2018, Great American sent a letter to Williams and O'Toole rejecting Defendants' appraisal demand with respect to alleged damage to the roof based on Great American's determination that the roof of the Property did not sustain damage covered under the Policy.  The letter indicated that Great American was prepared to proceed with the appraisal of the rooftop air conditioning units only.

37.     Williams, through his public adjuster, has expressed his intention to proceed with appraisal of the roof notwithstanding Great American's determination, supported by laboratory testing and the opinions of multiple roofing consultants, that the roof did not sustain damage from hail or any other covered cause of loss under the Policy.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment – Scope of Appraisal)

38.     Great American incorporates herein all previous allegations set forth in this Complaint.

39.     The Policy's appraisal provision requires appraisers to determine "the value of the property or the amount of loss."

40.     Appraisers and umpires have no authority to determine issues of causation or coverage.

41.     Based on Great American's determination that the roof was not damaged by hail or any other covered cause of loss, Defendants' demand for appraisal of the roof will necessarily require the appraisal panel to make improper determinations of causation and coverage contrary to the terms of the Policy.

42.     The parties have a current and actual dispute over whether the appraisal process provided for in the Policy can properly determine issues of causation and coverage.

WHEREFORE, Plaintiff Great American requests that the Court declare and enter judgment as follows:

A.     That the appraisal panel does not have authority to determine the cause of loss or coverage for damage, if any, to the roof of the Property, and that the roof is therefore not subject to appraisal under the Policy;

B.     That the appraisal panel is authorized only to determine the amount of loss to the rooftop air conditioning units;

C.    That Great American is entitled to recover from Defendants its costs and attorneys' fees incurred in bringing this action pursuant to A.R.S. Sections 12-341 and 12-341.01; and

D.    That Great American be awarded such other relief as the Court deems appropriate.

**RESPECTFULLY SUBMITTED** this 14th day of August, 2018.

**SANDERS & PARKS, P.C.**

By _____
Mark G. Worischeck
J. Adam Tate
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099
*Attorneys for Plaintiff Great American*
*Alliance Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.


By: _Shannon M Berry_ _____